IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JANE DOE, as the Natural Guardian of NANCY DOE, a Minor, MARY DOE, a Minor, and , a Minor, SUSAN DOE, a Minor, | ) ) ) ) ) |
| Plaintiffs | ) C.A. No.: ) ) Trial By Jury Demanded ) |
| v. | ) ) |
| CAPE HENLOPEN SCHOOL DISTRICT, DANE BRANDENBERGER, JANET MAULL, and CINDY CUNNINGHAM, | ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

1. Jane Doe, hereinafter referred to as "Parent" is a citizen of the State of Delaware and is the natural parent of the three minor plaintiffs, hereinafter named in paragraphs 2, 3 and 4. The plaintiff, Jane Doe, was born in Detroit, Michigan in the year of 1974, and is a natural citizen of the United States of America.

2. The minor plaintiff, Nancy Doe was born on February 11, 1994, in New York City, New York, and is a natural born citizen of the United States of America.

3. The minor plaintiff, Mary Doe was born on August 21, 1995 in New York City, New York, is a natural born citizen of the United States of America.

4. The minor plaintiff, Susan Doe was born on February 22, 1997 in Alexandria, Louisiana and is a natural born citizen of the United States of America.

5. The parent, and three minors are at all relevant times herein, residents of the State of Delaware, Sussex County. From April , 1997 until August, 2004 they were residents within the boundaries of the Cape Henlopen School District.

6. The parent and the minor s practice the Muslim faith.

7. The minor plaintiffs, Nancy, Mary, and Susan, were, as of September, 2003 enrolled in grades 4, 3, and 1, respectively, in the Shields Elementary School of the Cape Henlopen School District.

8. The defendant, the Board of Education of the Cape Henlopen School District, is organized under the laws of the State of Delaware to govern and administer education within the boundaries of that school district as described in 14 Del.C. §1069.

9. The defendant, Dane Brandenberger is a resident of the State of Delaware, and at all times relevant herein, was the superintendent of the Cape Henlopen School District.

10. The defendant, Janet Maull is a resident of the State of Delaware, and during the school year 2003-2004 was the principal of Shields Elementary School.

11. The defendant, Cindy Cunningham, is a resident of the State of Delaware, and at all times relevant herein was a teacher working at Shields Elementary School.

## JURISDICTION

12. Jurisdiction is conferred upon this Court pursuant to the provisions of 28 U.S.C. §1331 and 1343, in that the matters in controversy arise under the Constitution and laws of the United States of America. This Court also has supplemental jurisdiction to hear matters arising under the Constitution of the State of Delaware, and/or the laws of the State of Delaware, pursuant to 28 U.S.C. §1367(a).

13. Venue in this Court is proper under the provisions of 28 U.S.C. §1391(b), since the events which give rise to the plaintiff's claims, took place within the State of Delaware.

## FACTUAL ALLEGATIONS

14. During the school year of 2001-2002, and specifically during December of that year, the teacher to which the minor plaintiff, Mary Doe (hereinafter referred to as "Mary Doe") was assigned, permitted celebrations in her classroom revolving around the Christmas holidays.

15. In an effort to provide her children with a sense of self-worth and self-esteem, and to provide a balanced presentation of cultural outlooks, the plaintiff, Jane Doe, the mother of Mary Doe, who was in the described classroom offered to bring to her daughter's, Mary Doe's, classroom certain baked goods traditional to the Muslim holiday of Ramandan.

16. Mary Doe's teacher believing that such a presentation was inappropriate aided, abetted, and/or encouraged parents of other children in the class to contact Jane Doe in an effort to persuade, and/or coerce her into not making any presentation with regards to her child's observance to the Muslim holiday of Ramandan.

17. One or more of the defendants agreed to, consented to, acted in concert with, and/or approved of the community pressure directed towards Jane Doe in order to prevent her from providing any presentations concerning the Muslim holiday of Ramandan to her daughter, Mary Doe's class.

18. During the school year of 2000-2001, numerous parents of children attending Rehobeth Elementary School including, but not limited to, the plaintiff, Jane Doe, complained to administrators of the school district of certain activities that were deemed inappropriate of their children's school teacher.

19. The concerns expressed by the plaintiff, Jane Doe, concerning the inappropriate actions of the Rehobeth Elementary School gym teacher were attributed to Jane Doe's alleged

extreme religious beliefs. No such attribution as to the cause of the expression of such concerns were given to parents of other children who had expressed similar concerns.

20. In September 2002, on the first anniversary of the attacks upon the World Trade Center the personal property and home of the plaintiffs were vandalized by unknown persons of the community, the result of which caused Jane Doe to express concern to the defendant, Maull, for her children's physical safety, and expressed those concerns in writing both to the defendant Maull, and each of her children's teachers.

21. In September 2003, the defendant Cunningham began a course of instruction to the fourth grade at Shields Elementary School, in which the minor plaintiff, Nancy Doe, was a member. During the course of that lesson, students were informed "Muslim's believe the Koran, teaches war and hatred"; "Muslims believe that people who do not practice Islam are evil"; "Christians went to Afghanistan to help people, and in return, Muslims bombed the Christians"; "Islamic extremist hate America"; "Islamic terrorists believe the Koran tells then to fight countries like the United States". Other materials during the class presentation equated Muslims to terrorists and disparaged members of that religion.

22. The defendant, Ms. Cunningham, specifically pointed out among other things, that the plaintiff, Jane Doe, the mother of the minor plaintiff Nancy Doe, dressed as did oppressed women living in Afghanistan, and was "one of them".

23. As a result of the lessons taught by the defendant Cunningham, as described in paragraphs 21 and 22, the minor children in that classroom would make derisive comments, noises, and gestures towards Nancy Doe.

24. On September 11, 2003, the plaintiff, Jane Doe, contacted the defendant Maull to express her concerns about the unbalanced nature of the lessons described in paragraphs 21 and

22. The defendant Maull, stated that she would speak with the defendant Cunningham with regard to these concerns. Thereafter the defendant Cunningham continued with the same or similar materials equating members of the Muslim faith to terrorists.

25. During September 2003, the parent continued to express her concerns concerning the "Muslim lessons" directly to the defendant, Cunningham, who assured the parent that the same lesson materials would not be used in the future.

26. Notwithstanding the assurances made by the defendant Cunningham, the defendant Cunningham continued to describe Muslims as terrorists to the fourth grade class attended by the minor plaintiff, Nancy Doe.

27. On September 17, 2003, having received no response to messages left for the defendant Maull, the parent attempted to meet with the defendant, Brandenberger, and after having left a message for the defendant, Brandenberger, received no response to her written concerns.

28. On September 25, 2003, and again on September 29, 2003, the parent attempted to contact the defendant Maull but did not receive a response. The parent continued to receive no response from the defendant Brandenberger.

29. During December 2003, the defendant Cunningham included in her teaching materials to the class religious lessons concerning the Christmas holidays, included in the lessons taught to the children was that Christmas was intended as a religious celebration. In furtherant of the religious teachings conducted in December of 2003 the defendant Cunningham provided personal books belonging to her, concerning the Christmas holidays to the class, including books of a religious nature.

30. The defendant Cunningham, during December 2003 instructed her class as to the religious significance of various Christmas symbols, and relating those symbols to biblical prophecies.

31. The teachings of the defendant Cunningham to her class were contrary to the religious beliefs of the minor plaintiff Nancy Doe, and caused confusion and mental distress to her leading to feeling of being ostracized, and a desire not to attend school.

32. In January 2004, the parent met with the defendant Maull, who assured her that the ant-Muslim materials had been removed from the curriculum, when in fact they had not.

33. On January 22, 2004, in a meeting between the parent, the defendant Maull, and the defendant Cunningham, the defendant Cunningham stated that the minor plaintiff, Nancy Doe should be removed from her classroom and stated that there was no reason why she should not have been reading religious books during the Christmas holidays.

34. During the meeting on January 22, 2004 when it was suggested by the parent, that her daughter, Nancy Doe, would make a balanced presentation explaining the Muslim religion to the classroom, to boost her self-esteem, it was expressed that such an action would be inappropriate, in that it would "open a can of worms".

35. As a result of the meeting of January 22, 2004 the defendant Maull agreed to attempt to facilitate improved relations between the defendant Cunningham and Nancy Doe, so that Nancy Doe could return to the classroom.

36. On January 29, 2004, on Nancy Doe's first day of returning to the classroom, following inclimate weather, the defendant Cunningham approached Nancy Doe, in front of other children, and told Nancy Doe that she should transfer from Cunningham's class. When the minor plaintiff, Nancy Doe protested that she wished to stay with her friends in the same class

room, the defendant Cunningham again insisted that she should transfer to another class room. The defendant Cunningham continued to tell Nancy Doe that she needed to transfer to another classroom at which time other children in the classroom taunted Nancy Doe with "get lost" "we don't want you here" "no loser Muslims allowed".

37.     On January 30, 2004, when the parent took Nancy Doe to the office of the defendant, Maull, concerning the actions of the defendant Cunningham, the defendant Maull asserted that she didn't have time to deal with the situation and would do nothing other than to assist in a transferring of Nancy Doe to a different classroom. In attempt to explain defendant Cunningham's actions to the parent she stated "attitudes don't change over night". During this meeting, other school personnel were heard to comment: "Looks like we are in Saudi Arabia today".

38.     During the first week of February 2004, the defendant Cunningham began a course of ostracism of Nancy Doe while at the same time other fourth grade students in defendant Cunningham's class began continually harassing and telling Nancy Doe that "Ms. Cunningham told you to leave - - no loser Muslims allowed". As a result of these actions, on January 30, 2004, Nancy Doe did not go to school, and during which time the defendant Cunningham informed her class that Nancy Doe had transferred to another classroom.

39.     During the early part of February 2004, requests were made to the defendant Brandenberger, the defendant Maull, and defendant Cunningham concerning the nature of the anti-Muslim lessons of the defendant Cunningham, and, offering to provide assistance in diversity training for the school district. All such requests were ignored.

40.     On February 12, 2004, following complaints of the minor plaintiff, Susan Doe, the parent contacted one or more of the defendants to inform them that male members of Susan

Doe's class were approaching her, and taunting her by lifting up their legs and simulating the act of urination on her.

42. On February 13, 2004, the minor plaintiff Susan Doe was punched in the face by a brother of a classmate of Nancy Doe, who told Nancy Doe "I hate you". The same day, members of Susan Doe's class continued to simulate urination on her.

42. On February 13, 2004, the parent met with the defendant, met with the defendant, Brandenberger concerning the verbal abuse directed to the minor plaintiff Nancy Doe, and was told that all classroom materials being used by the defendant Cunningham were appropriate.

43. On February 19, 2004, the parent, and the plaintiffs Susan Doe and Nancy Doe met with the defendants Brandenberger and Maull to personally explain the nature of the persecution of them by classmates. The plaintiff, Nancy Doe, tried to explain, tearfully, that the actions of the defendant Cunningham had taken her religion away from her. The only response by the defendants was from the defendant Brandenberger, who stated that Nancy Doe should go home for the day.

44. On that same day, February 19, 2004, the defendant Brandenberger informed the parent that the defendant Cunningham had not acted improperly, and that Susan Doe had not been struck in the face.

45. On February 20, 2004, when the parent attempted to consult with school personnel concerning the situation, including the school counselor, the defendant Maull demanded that the parent leave the premises. When the parent again requested that the defendant Maull protect Susan Doe, the defendant Maull insisted that the parent leave school premises.

46. On February 23, 2004, Nancy Doe was directed to transfer out of the defendant Cunningham's classroom, despite the protest by Nancy Doe that her classmates would think that she had done something wrong.

47. On February 26, 2004, the first day that Nancy Doe had been assigned to a new classroom, her former classmates taunted her and informed her that they could not longer speak with her as a result of which the plaintiff Nancy Doe became hysterical.

48. In spite of specific complaints, that the plaintiff Susan Doe was being harassed by a specific student, personnel of the defendant's school required that the two students would work together on school projects.

49. During the last weeks of February 2004 and the first week of March 2004, the plaintiff Nancy Doe had become so depressed and so upset that she was unable to attend school. Upon her return to school on March 5, 2004, children of both her former class and her new class would taunt her as a "loser Muslim".

50. As a direct and proximate result of the actions of the defendants, the harassment of the plaintiff, Nancy Doe, the plaintiff Nancy Doe began private therapy on March 8, 2004.

51. During the months of March 2004, as a direct result of the complaints made by the parent, on behalf of her daughter, the minor plaintiff, Nancy Doe, Nancy Doe continued to be harassed by students and ridiculed for her religion, and perceived nationality.

52. As a proximate and direct result of the continued derogatory comments, ridicule, and harassment, the plaintiff, Nancy Doe lost all desire to attend school and became fearful for her well being.

53. During the later part of March 2004 as a result of the minor plaintiff, Nancy Doe's inability to attend school, the defendant Maull wrote to the parent, warning the parent that unless

Nancy Doe returned to school, she would be regarded as truant and be administered a failing grade.

54. When the parent approached one or more of the defendants in an effort to resolve concerns of the minor plaintiff, Nancy Doe, the defendants explained to her that no apologies were warranted and that the school curriculum would be maintained in its current form.

55. During the discussions by the parent with the defendants, as to circumstances, which would permit the minor plaintiff, Nancy Doe to return to school, she reminded the defendants of her attempts to resolve the problem on February 20, 2003, when she was escorted from the school and was told at that point that it was fortunate that the police had not been called for her on that day.

56. After the meetings of March and April 2004, the minor plaintiff, Susan Doe was harassed by her classmates, told she was ugly, and was identified as a Muslim because she did not go to church and had an ugly name. Thereafter, the minor plaintiff, Susan Doe, as did her sister Nancy Doe, became so distressed and upset that she could not attend school.

57. As a direct and proximate result of the ridicule, and harassment directed to the minor plaintiff, Nancy Doe, Nancy Doe's physician prescribed homebound instruction, specifying that the minor plaintiff, Nancy Doe, was suffering from severe depression, anxiety, and panic attacks brought on by her school environment.

58. During May of 2004 the minor plaintiff, Nancy Doe, began homebound instruction with a teacher, who, despite the requests of the parent continued to discuss such matters as war, ethnic hatreds, and religious and ethnic wars. The result of these lessons were that the therapist who was providing treatment to the minor plaintiff, Nancy Doe, contacted the

defendants and stressed that such topic lessons were harmful to the minor plaintiff, Nancy Doe's emotional health.

59. After the contact with the minor plaintiff's, Nancy Doe's therapist with the defendants, the assigned homebound instructor failed to appear for regularly scheduled lessons.

60. When the parent contacted administrators of the defendant to try and arrange a tutor, the parent was told that while Nancy Doe was being given homebound instruction, the parent was to "stay away from her".

61. Beginning on May 27, 2004, the defendants approved a new homebound instructor for the minor plaintiff, Nancy Doe, but limited the instructions to 5 hours per week for a period of only two weeks until June 8, 2004, despite the requests by the homebound instructor, that additional time was needed and she was willing to provide the additional time during the summer in order to help the minor plaintiff, Nancy Doe, to catch up on the months of missed work.

62. On June 3, 2004, one or more of the defendants issued an authorization for summer homebound instruction, but for only three to five hours per week.

63. During the summer of 2004 the parent attempted negotiations with one or more of the defendants in order to insure that during the school year 2004-2005 the minor plaintiffs would not be subject to derogatory comments, ridicule, and harassment as they had during the 2003-2004 school year. The defendants failed to provide any assurances or make any provisions or make any provisions that such conduct be prevented.

64. As a direct and proximate result of the actions of the defendants, and the parent's desire to insure the minor plaintiffs a quality, peaceful, and meaningful education, the parents

moved from the Cape Henlopen School District, to a new school district, in order that the children not be subjected to the same treatment in the new school year.

## COUNT I

### (Equal Protection)

65. The plaintiffs incorporates herein and makes a part hereof the allegations contained in paragraphs 1 through 64.

66. The actions of the defendants were with deliberate indifference to the consequences of their actions and inactions, and further the defendants' actions established and maintained policies and practices, or customs, which directly caused Constitutional harm to the plaintiffs.

67. The actions of the defendants invaded the fundamental right of the plaintiffs, which cannot survive strict scrutiny since they were not tailored to serve any compelling governmental purpose.

68. The actions of the defendants granted a forum to one religious belief while denying expression of a similar class of beliefs to members of a different religion.

69. The actions of the defendants allowed the promotion of their Christian beliefs while at the same time denying the plaintiffs the ability to discuss their own religious beliefs, or to discuss equally religious beliefs of the plaintiffs.

70. The actions of the defendants violated the plaintiffs' rights to equal protection under the Fourteenth Amendment of the United States Constitution through the provisions of 42 U.S.C. §1983.

## COUNT II

### (Due Process)

71. The plaintiffs incorporate herein and make a part hereof the allegations contained in paragraphs 1 though 70.

72. The defendants actions maintained a practice, custom and policy of deliberate indifference to action and/or inappropriate action with respect to known harassment of the plaintiffs by students and teachers. This conduct, communicated to other students that such harassment was visible thereby creating a climate that encouraged and condoned harassment of the plaintiffs. It further exacerbated harm suffered by the plaintiff so that it encouraged and condoned the continuation and increased the harassment of the plaintiffs.

73. The above-described conduct of the defendants violated substantive due process rights of the plaintiffs, as guaranteed to them by the Due Process Claus of the Fourteenth Amendment of the United States Constitution through the provisions of 42 U.S.C. §1983.

## COUNT III

### (Retaliation for Exercise of Free Speech)

74. The plaintiffs incorporate herein and make a part hereof the allegations contained in paragraphs 1 through 73.

75. The actions of the defendants were taken and were substantially motivated by a desire to retaliate against the plaintiffs for complaints the plaintiffs made for violation of their First Amendment rights.

76. One or more of the minor plaintiffs were transferred from one class to another because of their complaints of the violation of their First Amendment rights.

77. As a result of the retaliatory actions of the defendants, the plaintiffs have suffered physical and emotional ostracism.

78. The actions of the defendants, school administrators, were taken with deliberate indifference to known acts of harassment where such action would have systematic effect on the educational opportunity of the plaintiffs.

79. The defendants acted with deliberate indifference the consequences of, and established and maintained a policy, practice and/or custom of retaliation against the plaintiffs for the attempted exercise of them by their right of free speech and/or religion. All in violation of the First Amendment of the United States Constitution and through the provisions of 42 U.S.C. §1983.

## COUNT IV

### (State Created Danger)

80. The plaintiffs incorporate herein and make a part hereof the allegations contained in paragraphs 1 through 79.

81. The injuries suffered by the minor plaintiffs as described herein were directed and foreseeable as a result of the actions of the defendants.

82. The defendants acted willfully in disregard of the minor plaintiffs' safety, which actions were grossly negligent and/or arbitrary and in conscious disregard of the minor plaintiffs' rights.

83. There is a relationship between the state and the students in that they were foreseeable victims of the harm done to them in that they were members of discrete class subject to such potential harm.

84. The defendants were state actors, which created an opportunity for danger which would not otherwise have existed.

85. The actions of the defendants created a state danger which denied the plaintiffs their rights of due process under the Fourteenth Amendment of the United States Constitution through the provisions of 42 U.S.C. §1983.

## COUNT V

### (State Constitutional Protections)

86. The plaintiffs incorporate herein and make a part hereof the allegations contained in paragraphs 1 through 86.

87. The course and actions of one or more of the defendants, as described herein, denying the minor plaintiffs the equal opportunity to practice their religion, permitting religious celebrations in the classroom, using religious materials in the lessons, the denigration of the plaintiffs' religion, the refusal to permit a balanced presentation concerning the plaintiffs' religion as compared to other religious lessons, served to place a stamp of preference upon the religious beliefs of the defendants.

88. The actions of the defendants in giving a preference to their own religious beliefs, were in violation of Article I, Section 1 of the Delaware Constitution of 1897, which provides that no preference should be given by law to any religious denomination or mode of worship.

89. As a result, the actions of the defendants denied the minor plaintiffs of the equal protection of the laws under the Fourteenth Amendment of the United States Constitution through the provisions of 42 U.S.C. §1983.

**WHEREFORE**, the plaintiffs request this Court to:

      a.    Issue declaratory and injunctive relief directing the defendants to cease engaging in such unconstitutional and unlawful acts and to develop policy procedures for the ending of any such unconstitutional and unlawful acts, and the hostile and intolerant environment described herein.

      b.    Issue an injunction directing defendants to implement mandatory training programs for faculty and staff on issues of religious and cultural diversity.

      c.    Issue an injunction requiring the defendants to adopt policies and specific guidelines for instructing the defendants administrators on how to address complaints by students who have been taunted, harassed, or discriminated against because of their religion or social background.

      d.    Issue an injunction requiring the defendants to maintain statistical data concerning each complaint of racial discrimination and/or harassment made by students as well as specific action taken by the defendants to resolve such complaints.

      e.    For compensatory damages to compensate the plaintiffs for the pain, suffering and consequential damages.

      f.    For exemplary and punitive damage.

      g.    For this cost of this action including reasonable attorney fees.

      h.    For pre-judgment and post-judgment interest on any monetary award made herein.

      j.    For such other just and further relief this Court shall deem proper and appropriate.

ABER, GOLDLUST, BAKER & OVER

/s/ Gary W. Aber

GARY W. ABER (DSB #754)
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE 19899
(302) 472-4900
Attorney for Plaintiffs

DATED: June 23, 2005