**TAB A**

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 1990 WL 251405 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

**C**
Cocco v. A.C. & S. Co., Inc.
Del.Super.,1990.
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware, New Castle County.
Armard COCCO, Sr., et al., Plaintiffs,
v.
A.C. & S. CO., INC., et al., Defendants.
**Civ. A. No. 86C-DE-188.**

Submitted: Nov. 28, 1990.
Decided: Dec. 12, 1990.

On Exceptions to Master's Final Report On Motion
to Compel Cardiopulmonary Exercise Test.

Michael T. Ward, Esquire of Law Offices of Peter
G. Angelos, for plaintiffs.
Paul A. Bradley, Defense Medical Coordinator of
McCarter & English, for defendants.

ORDER

TAYLOR, Judge.
*1 The Master's Final Report dated November
5, 1990 held that the named plaintiffs would be
ordered to undergo Cardiopulmonary Exercise
Testing [C.P.X.] as a part of defendants' pretrial
discovery upon defendants filing certain informa-
tion under oath and subject to compliance with cer-
tain restrictions in the performance of the test.
Plaintiffs have filed exceptions to that Report.
Plaintiffs' position is that: the test "inherently in-
volves the risk of serious injury, including death
from coronary complications", the vast majority of
authorities do not include information yielded by
Cardiopulmonary Exercise Testing "as criteria
needed to diagnose asbestos-related disease". Based
upon these allegations, plaintiffs contend that good
cause required under Super.Ct.Civ.R. 35 has not
been shown for the test because the risk of harm

from the test outweighs defendants' need for the test
information. Further, plaintiffs contend that the
Court has no authority to require them to give in-
formed consent to permit defendants' designated
physician to permit him to perform the test.

I.

The first issue to be considered is whether de-
fendants have shown good cause for having the test
performed. Each plaintiff seeks damages for alleged
injury resulting from exposure to asbestos. This
raises the question of whether plaintiffs have an as-
bestos-related disease and if so what is the extent of
injury attributable to that disease.

In general, defendants are entitled to discovery
which is relevant to those issues and to information
which appears reasonably calculated to lead to dis-
covery of admissible evidence. Super.Ct.Civ.R.
26(b)(1). Relevant evidence is evidence having a
tendency to make the existence of any fact that is of
consequence to the determination of the action
more probable or less probable than it would be
without the evidence. D.R.E. 401.

The Master has correctly found that plaintiffs
have placed their physical condition in issue in
these cases. The Master recognized that the United
States Supreme Court in *Schlagenhauf v. Holder,*
379 U.S. 120, 85 S.Ct. 234 (1964) stated that

"[a] plaintiff in a negligence action who asserts
mental or physical injury ... places that mental or
physical injury in controversy and provides the de-
fendant with good cause for an examination to de-
termine the existence and extent of the injury."

The Supreme Court referred only to
"examination" and did not define the extent of the
examination.

Courts generally have not considered that de-
cision to be dispositive of the issues that may arise

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                    Page 2
Not Reported in A.2d, 1990 WL 251405 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

in the many variations of discovery of a medical nature which may arise in litigation. 8 Wright & Miller, *Federal Practice and Procedure:* Civil § 2234. The nature and seriousness of the proposed test, the significance of the test results to the claim or defense, the availability of the same or equivalent information from other sources, the possibility of harm to plaintiff, and precautionary measures to be taken are factors which must be weighed in determining whether or not good cause exists for compelling plaintiffs to submit to the test.

**\*2** Here, the Master did not rest his finding on plaintiffs' claims alone. Instead, he considered affidavits and medical treatises in making his decision. Furthermore, he recognized that requests for this type of test must be considered on an individual basis after showing of defendants' need for the information which the test may provide, based on the medical history and claimed disease and disability of the particular plaintiff, and the risk to that individual from taking the test.

The medical authorities which defendants have supplied indicate that the test which defendants seek may provide information from which it can be determined whether a plaintiff's physical disability is caused by reduced lung function and also the extent to which reduced lung function may contribute to the physical disability compared with that contributed by disability of some other organ. It is noted that plaintiffs rely on a declaration of Dr. Gerrit W.H. Schepers stating that the cardiac exercise test proposed by Dr. Nissim "is of virtually no value in determining whether the person has pulmonary disease when the only respiratory measurement is tidal volume." He further states that the stress testing can cause sudden death or precipitate myocardial infarction. Accordingly, he recommends that if the test is given, it should be given in a hospital under controlled limitations and the condition of the participant should be monitored throughout the test.

I am informed that some plaintiffs undergo such tests at the request of their own attorney or physician.

Considering all the affidavits and medical authorities which have been presented in connection with this motion, I find the Master's Final Report correctly determined that good cause may be shown as to particular plaintiffs warranting an order requiring the plaintiff to undergo C.P.X. testing under conditions such as those specified in the Master's Final Report if proper submissions satisfying the considerations described above are provided. However, that showing must be based on a bona fide dispute concerning the disease or the degree of impairment from the disease which it is contended each plaintiff has. *Cf. In Re Certain Asbestos Cases,* N.D.Tex., 112 F.R.D. 427 (1986). Defendants are required to submit additional affidavits by a physician applying the considerations discussed herein and specified in the Master's Final Report to each specific plaintiff. Plaintiffs may submit countering physician affidavits. The Court (Master or Judge) will then determine whether or not the proposed test will be ordered.

II.

Although the next issue was not considered by the Master's Final Report, plaintiffs also contend before me that even if the good cause requirements are satisfied by defendants, plaintiffs cannot be required to give consent to the physician to perform the test. Obviously, the physician cannot be expected to give such test in the absence of such consent.

This consideration starts from the proposition that the Court which enters an order in the exercise of the powers of his office may take appropriate action to enforce that order. To that end, Super.Ct.Civ.R. 35(b)(2) permits the Court to impose sanctions for failure to comply with the Court's order. Thus, the Court may bar a violating party from introducing evidence of the physical condition to which the examination applies, may take the facts as presented by the opponent, or may dismiss the action. 8 Wright & Miller, *Federal Practice and*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 3
Not Reported in A.2d, 1990 WL 251405 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

*Procedure:* Civil § 2238; *Bodnar v. Bodnar,* 441 F.2d 1103 (5th Cir.1971).

**\*3** In this Court a succession of decisions have recognized that this Court has the power to require a party to undergo examinations and testing if that is found to be needed in the interest of justice in the particular case. *Connolly v. Labowitz* Del.Super., C.A. No. 83C-AU-1, Poppiti, J. (Feb. 18, 1987) (Letter Opinion); *Id.,* Taylor, J. (Oct. 22, 1986) (Order); *Ota v. Health-Chem Corporation,* Del.Super., C.A. 83C-FE-99, Taylor J. (May 1, 1985) (Order); *Id.,* Bifferato, J. (Dec. 17, 1984) (Letter Opinion); *Shaw v. Metzger,* Del.Super., C.A. No. 77C-DE-101, Taylor, J. (Feb. 19, 1985 and Feb. 22, 1985) (Letter Opinions). Where the Court directs that the examination or test is needed, the party must make a choice whether to comply or to refuse and take the consequences of the refusal. Those consequences would be determined based upon the standards referred to in the preceding paragraph.

The Master's Final Report is ADOPTED as set forth herein.

IT IS SO ORDERED.

Del.Super.,1990.
Cocco v. A. C. & S. Co., Inc.
Not Reported in A.2d, 1990 WL 251405 (Del.Super.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB B

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2006 WL 2263905 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Leal v. Siegel
N.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Stephen LEAL, Plaintiff,
v.
Officer K. SIEGEL, et al., Defendants.
**No. C05-00959 JW.**

Aug. 8, 2006.

Louis Patrick Dell, Sean Erenstoft, Law Office of
Sean G. Erenstoft, Los Angeles, CA, for Plaintiff.
Clifford S. Greenberg, Nora Valerie Frimann, Of-
fice of the City Attorney, Michael L. Rossi, Lisa
Herrick, Office of the County Counsel, San Jose,
CA, for Defendants.

**ORDER GRANTING DEFENDANTS' MO-
TION TO COMPEL PLAINTIFF'S PHYSICAL
EXAMINATION**

HOWARD R. LLOYD, Magistrate Judge.

*1 Plaintiff Stephen Leal brings this excessive
force civil rights action against the City of San
Jose, the County of Santa Clara, and various law
enforcement and correctional officers. He claims
that he was assaulted by several defendant officers,
and, as a result, sustained personal injuries includ-
ing nerve damage.

On July 14, 2006, defense counsel sought a
stipulation for an independent medical examination.
The defense had scheduled an examination for Au-
gust 18, 2006, to be conducted by Dr. Peter Cassini,
Deputy Chief for the Department of Neurology at
Stanford University Medical Center. Plaintiff re-
fused to attend. The Santa Clara County defendants
move to compel the examination. Plaintiff objects
on several grounds: (1) failure to provide adequate
notice of the nature and extent of the proposed ex-
am, (2) inconvenient location, (3) travel costs, and
(4) work conflicts.

Federal Rule of Civil Procedure 35 provides:

When the mental or physical condition ... of a
party ... is in controversy, the court in which the ac-
tion is pending may order the party to submit to a
physical or mental examination by a suitably li-
censed or certified examiner ... The order may be
made only on motion for good cause shown and
upon notice to the person to be examined and to all
parties and shall specify the time, place, manner,
conditions, and scope of the examination, and the
person or persons by whom it is to be made.

Plaintiff does not dispute that his physical con-
dition is in controversy or that there is good cause,
but argues that defendants have not adequately de-
scribed what will occur at the exam. The court is
satisfied that defendants have sufficiently described
the scope of the examination.[FN1] It would be im-
possible to specify in advance exactly what will oc-
cur at such an exam. *See Ragge v. MCA/Universal
Studios,* 165 F.R.D. 605, 609 (C.D.Cal.1995) ("It
would serve no purpose to require [the doctor] to
select, and disclose, the specific tests to be admin-
istered in advance of the examination"). Dr. Cassini
will presumably use his professional discretion in a
reasonable and humane fashion. The court OR-
DERS plaintiff to submit to a complete physical ex-
amination of the neck, upper spine, shoulders, up-
per extremities, waist, low back, and all upper body
areas that may contribute to symptoms about which
plaintiff complains in his shoulder, arms, hands,
low back and waist. The examination will also in-
clude a complete medical history, including the fac-
tual circumstances of his injury, post and present
physical complaints, medical treatment, limitation,
and relevant or related past medical or work his-
tory. In addition, Dr. Cassini may request x-rays or
similar diagnostic tests that are ordinarily deemed
part of a general neurological exam.

> FN1. Defendants state in their Memor-
> andum of Points and Authorities that the
> exam will consist of "a complete physical
> examination of plaintiff's neck, upper

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 2263905 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

spine, shoulders, upper extremities, waist, low back, and all upper body areas that may contribute to symptoms about which plaintiff complains in his shoulder, arms, hands, low back and waist. The examination will also include a complete medical history, including the factual circumstances of his injury, post and present physical complaints, medical treatment, limitation, and relevant or related past medical or work history. In addition, Dr. Cassini might request x-rays or similar diagnostic tests. The examination is not anticipated to take more than four hours, but it is requested that the examination be Ordered to continue so long as reasonably required."

Defendants seek to conduct the exam in Palo Alto, despite plaintiff's residence in Los Angeles. The general rule is that a plaintiff must submit to an examination in the venue where the action is filed. *See Blount v. Wake Elec. Membership Corp.,* 162 F.R.D. 102, 107 (E.D.N.C.1993). Plaintiff argues that he did not choose this venue, but rather was forced to bring his action here because the "attack" on him occurred here. He cites no authority, however, that this distinction affects the general rule. He also argues that it is intimidating and humiliating to require him to travel, at his own expense, to the location where he was attacked. Barring exceptional circumstances, a plaintiff must bear his own expenses when obligated to submit to an examination in the district where he has filed suit. *See* 7 Moore's Federal Practice, § 35.09 (Matthew Bender 3d ed.); *McCloskey v. United Parcel Service General Servs. Co.,* 171 F.R.D. 268, 270 (D.Or.1997). No exceptional circumstances exist. The court ORDERS plaintiff to submit to the physical examination as it was noticed by defendants: in Dr. Cassini's office in Palo Alto. Plaintiff will pay his own travel expenses.

*2 Finally, plaintiff states that he is unavailable on August 18 because of prior work plans, but he

could be available August 29 or 30. It is unfortunate that the examination is slated to take place on the same day that plaintiff has important work commitments, but the court is unwilling to assume that Dr. Cassini's schedule has another opening before the discovery cut-off at the end of August. If the parties and the examining doctor can agree on a more convenient day, all the better, but if not, the court ORDERS plaintiff to submit to the physical examination on the noticed day, August 18, 2006.

**IT IS SO ORDERED.**

N.D.Cal.,2006.
Leal v. Siegel
Not Reported in F.Supp.2d, 2006 WL 2263905 (N.D.Cal.)

END OF DOCUMENT